FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 05 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VERMELL JOHNSON,

                Plaintiff,

-against-

DYNAMIC EDUCATIONAL SYSTEMS, INC.,

                Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
08-CV-5233 (CBA) (LB)

AMON, Chief United States District Judge:

Dynamic Educational Systems, Inc. ("DESI") has moved for summary judgment on the Title VII race-based failure to promote claim of its former employee, Vermell Johnson. 42 U.S.C. § 2000e et seq. The Court has already awarded summary judgment to DESI on Johnson's Title VII claims of race-based hostile environment, race-based discriminatory termination, and retaliatory termination. See Feb. 7, 2011 Memorandum and Order, Docket Entry # 39. Johnson has not responded to the motion even though she has been offered multiple opportunities to do so.

For the reasons that follow, the motion for summary judgment is granted.

## BACKGROUND

### I. Facts and Administrative Proceedings

A full account of the facts relevant to this litigation can be found in the Court's February 7, 2011 Memorandum and Order that granted summary judgment to DESI on all but the claim for race-based failure to promote. Familiarity with that order is assumed.

From about April 2003, Johnson—who describes herself as African-American—was employed by DESI—which at all times relevant to this litigation operated a Job Corps facility in Callicoon, New York—as a career transition specialist. (Def. R. 56.1 ¶ 2.) As a career transition

1

specialist, Johnson was principally responsible for helping students who had completed the Job Corps program find post-graduation employment. (Id.)

Although the Job Corps facility that DESI operated was located in Callicoon, Johnson worked most days out of Brooklyn, New York because about ninety percent of the students whom she was charged with assisting lived in and around New York City. (Id.) Johnson initially reported directly to Brenda Meeker, a white woman who worked out of Callicoon. (Id. ¶ 3.)

In July or October 2004,[1] Johnson interviewed with Meeker and Rebecca Hokien, a DESI human resources manager, for a position as a career transition specialist coordinator. (Def. 2d R. 56.1 ¶¶ 1, 3.) The career transition specialist coordinator, as the title suggests, works above the specialists. On the same day that they interviewed Johnson, Meeker and Hokien also interviewed two other individuals, including Edward Koku, one of Johnson's co-workers. (2d Tiffen Decl. Ex. F at 430.) Koku is African-American. (Id. at 443.)

In connection with state administrative proceedings that preceded this litigation, Meeker testified that, after each candidate interview, she asked the candidate "to follow up with an updated resume and a letter of interest, if they would like to proceed with the second interview." (Id. at 430.) Koku submitted a post-interview resume and letter of interest. Johnson did not, and neither did Crowe, another individual whom Meeker and Hokien initially interviewed. (Id.)

At some point after the preliminary interviews, and after Koku completed two additional interviews, Meeker and Hokien decided to promote Koku. (Id.) Meeker and Hokien prepared a formal offer letter, but before they could complete or deliver it, Koku accepted a grant to return to school at Columbia University and so left DESI. (Id.)

---

[1] Johnson's complaint alleges that the interview occurred in July. Meeker testified in a state administrative proceeding that she believed the interview occurred in October.

DESI eventually internally promoted Akil Bektemba, who had been working in Atlanta, to fill the coordinator position. Bektemba began work on January 22, 2005. (Def. R. 56.1 ¶ 14.) As the Court explained in its February 7, 2011 Memorandum and Order, Johnson clashed with Bektemba and was eventually terminated on March 21, 2005.

Johnson subsequently filed, on October 24, 2005, a charge of discrimination with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC"). (2d Tiffen Decl. Ex. H.)

The original charge stated that Johnson had "been subject to unlawful discriminatory actions" because she "complained about a white manager making a racial remark regarding a black student." (Id.) That allegation was a reference to Johnson's complaint, described in the Court's earlier order, that, at a December 21, 2004 staff meeting, Meeker referred to a Job Corps student as "that big black . . . ."

The original charge also stated that Johnson's "time, attendance, and job performance was satisfactory until December 21, 2004 when I complained about manager Ms. Meeker (white) referring to a black student as a 'big black . . .' . . . and was retaliated against with my performance now being an issue." (Id. (first ellipsis in original).) Johnson also stated that Meeker, who was "angry" at her, "took advantage of a new supervisor Akil Mephetember [sic] (African American), by having him fabricate and document lies about my performance," which lies were ultimately used to support Johnson's termination. (Id.)

The October 2005 charge closed by stating: "I charge respondent with an unlawful discriminatory practice relating to employment because of race / color." (Id.)

Johnson filed an amended charge of discrimination on October 4, 2006, and that charge contains the same substantive allegations. (2d Tiffen Decl. Ex. I.) The amended charge differs

from the original only in that it also charges, in addition to an unlawful employment practice because of race / color, an unlawful employment practice because of "opposing discrimination / retaliation." (Id.)

After an August 2007 hearing, a DHR administrative law judge rejected Johnson's charge of discrimination, concluding that she had not established that she was terminated because of her race or because of her complaint about Meeker's comment at the December 2004 staff meeting.

On December 29, 2008, after she received a right to sue letter from the EEOC (which had adopted the DHR's opinion), Johnson filed suit against DESI. As the Court explained in its earlier order, the pro se form employment discrimination complaint, liberally construed, Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010), alleged four violations of Title VII: (1) hostile environment; (2) discharge based on race; (3) retaliatory discharge; and (4) race-based failure to promote.

## II. Proceedings in this Court

By memorandum and order dated February 7, 2011, the Court granted summary judgment to DESI on all but the promotion claim, a claim that DESI had not mentioned in its summary judgment papers. In the February 7, 2011 Memorandum and Order, the Court informed DESI that, if it intended to move for summary judgment on the promotion claim, it could do so without the need for a pre-motion conference.

By letter dated February 28, 2011, DESI served its second motion for summary judgment on Johnson. (D.E. # 40.) The letter proposed a briefing schedule, noting that, although DESI had attempted to negotiate a schedule during a February 23, 2011 telephone conference with Johnson, Johnson had refused to specify a date by which she would serve her response. DESI asked Johnson to let it know if the proposed schedule was acceptable.

By letter dated April 6, 2011, DESI wrote the Court, stating that Johnson had not responded to the second motion for summary judgment or the February 28, 2011 letter. (D.E. # 41.) The letter further stated that DESI had spoken with Johnson by telephone on Mach 31, 2011, that Johnson had confirmed that she had not prepared a response, and that Johnson had declined to agree to a briefing schedule but said that she would call back. According to DESI, the plaintiff never called back.

On April 15, 2011, the Court ordered a briefing schedule, pursuant to which Johnson's response to the second motion for summary judgment was to be served by May 12, 2011 and the fully briefed motion was to be submitted to the Court by May 20, 2011.

On May 20, 2011, DESI again wrote the Court, informing it that the second motion for summary judgment was being filed unopposed because Johnson had not served her opposition or otherwise contacted DESI. (D.E. # 42.)

By order dated May 20, 2011, the Court directed Johnson to respond to the second motion for summary judgment by June 13, 2011. (D.E. # 49.) The Court advised that if Johnson failed to respond, the Court would decide the motion unopposed. Johnson has not filed a response or otherwise contacted the Court.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing

law." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks omitted).

The movant bears the burden of establishing that no genuine issue of material fact exists. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The court "must resolve all ambiguities and draw all reasonable inferences against the movant." Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 (2d Cir. 2010).

"To survive summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks and emphasis omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." ·Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Moreover, "the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 84 (2d Cir. 2004).

"Summary judgment is appropriate even in discrimination cases, for . . . 'the salutary purposes of summary judgment—avoiding expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004), quoting Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

Relevant here, "even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of

demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).

"Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear, 373 F.3d at 244.

## II. Timeliness and Administrative Exhaustion

DESI argues first that it is entitled to summary judgment on the failure to promote claim because Johnson's charge of discrimination did not allege race-based failure to promote and because, even if it had, the charge would not have been timely with respect to the promotion claim. (Def. S.J. at 3–5.) Summary judgment is appropriate.

### A. Relevant Law

"A plaintiff may bring an employment discrimination action under Title VII . . . only after filing a timely charge with the EEOC or with 'a state or local agency with authority to grant or seek relief from such practice.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82–83 (2d Cir. 2001), quoting 42 U.S.C. § 2000e-5(e).

Claims not raised in an agency charge may nevertheless be the subject of a complaint in federal court if they are "reasonably related" to the claim(s) submitted to the agency. Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006). A claim asserted for the first time in federal court is reasonably related to allegations in an agency charge "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts v. City of New York Dep't of

Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) (internal quotation marks omitted).

A claim asserted in federal court is also reasonably related to a claim in an agency charge where the federal court claim (1) alleges retaliation by an employer against an employee for filing an EEOC charge or (2) alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Williams, 458 F.3d at 70 n.1 (internal quotation marks omitted).

A charge is timely if it is filed "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), (f)(1); see also Petrosino v. Bell Atl., 385 F.3d 210, 219 (2d Cir. 2004). The three hundred day limitations period begins to run from the date on which the employee "knew or had reason to know of the alleged injury, Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004), here [DESI's] failure to promote." Davis v. City of New York, No. 09 Civ. 669, 2010 WL 3895578, at *2 (S.D.N.Y. Oct. 5, 2010); see also Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992) ("The timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.").

Failure to file a timely charge of discrimination acts as a non-jurisdictional bar to suit in federal court. Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982) ("not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

**B. Application of Relevant Law**

DESI is entitled to summary judgment on the ground that Johnson failed to timely file a charge of discrimination with respect to her promotion claim.

As an initial matter, the Court cannot say that, as DESI urges, Johnson's October 24,

2005 charge was not filed within three hundred days of the date on which Johnson knew or should have known that she had been denied promotion to the coordinator position. Johnson clearly knew or should have known that she had not received the coordinator promotion for which she applied by January 22, 2005, the day on which Bektemba began work as coordinator. But that fact does not render her charge, filed 275 days after January 22, 2005, untimely.

Significantly, given the state of the record provided, the Court cannot say that Johnson knew or should have known at any time before January 22, 2005 that she had been denied the promotion. DESI, which bears the burden of establishing that Johnson's claim is time barred— e.g., Thomas v. Metro. Dist. Comm'n, No. 02 Civ. 457, 2004 WL 1402290, at *2 (D. Conn. June 1, 2004), citing Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)—has not identified any evidence that speaks to this issue. The Court thus cannot say that Johnson should have known at some earlier point that she had not earned the promotion because, for example, Meeker told her that her application had been rejected, or because she knew that other candidates had been offered second- or third-round interviews and that she had not.

Accordingly, summary judgment on this ground is not warranted. See Arroyo v. New York Downtown Hosp., No. 07-CV-4275, 2010 WL 3861071, at *4 (E.D.N.Y. Sept. 28, 2010) (no summary judgment because "defendant has not come forward with any evidence showing when Arroyo became aware or had reason to know that he was not promoted").

Nevertheless, DESI is entitled to summary judgment because Johnson's failure to promote claim is not "reasonably related" to any of the claims included in the charge of discrimination that she filed with the DHR and EEOC. That charge contained facts suggesting and supporting only the allegation that, after December 21, 2004, Meeker harassed Johnson and sought to have her terminated.

There is no suggestion at all that the promotion claim is reasonably related to the claims in the charge for the reason that the failure to promote was retaliation for filing an agency charge (no charge was filed until after Johnson was terminated) or that the failure to promote was undertaken in the same manner as the harassment and termination described in the charge. Williams, 458 F.3d at 70 n.1.

Moreover, no investigation into those allegations could reasonably have been expected to involve inquiry into Johnson's separate July or October 2004 application for a promotion. The only reasonable reading of the agency charge is that all was well with Johnson's employment until Johnson complained about Meeker's comment at the December 2004 staff meeting. Additionally, there is no suggestion that the decision whether to promote Johnson was at all effected by Johnson's complaint about Meeker's comment at the December 2004 staff meeting; the record reveals that that complaint well post-dates the promotion decision.

Summary judgment is thus appropriate. See, e.g., Colquitt v. Xerox Corp., No. 05-CV-6405, 2010 WL 3943734, at *5 (W.D.N.Y. Oct. 7, 2010) ("the plaintiff has not demonstrated that the failure to promote . . . , even if racially motivated, could reasonably grow out of the incidents of which she complained in the EEOC charge, which consisted of a series of racial epithets by co-workers and the corresponding lack of response by management"); cf. Gutierrez v. City of New York, No. 08 Civ. 6537, 2010 WL 4823644, at *3 (S.D.N.Y. Nov. 29, 2010) (failure to promote claims were "based on the same allegations of race and national origin discrimination that underlie the EEOC claims" because the plaintiff's "EEOC claims addressed performance evaluations, denial of overtime, job assignments, transfers, and alleged harassing and discriminatory statements by supervisors"); Mohan v. Target, No. 04-CV-987, 2009 WL 2957953, at *5 (W.D.N.Y. Sept. 11, 2009).

### III. Merits

DESI also argue that, even if Johnson timely exhausted the promotion claim, the claim fails on the merits. DESI argues that the undisputed evidence establishes that Johnson was not promoted because, after her initial interview, she did not submit a formal letter of interest or a current resume. The Court agrees that summary judgment is warranted even if the merits are considered.

### A. Relevant Law

The burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), governs claims of race-based failure to promote in violation of Title VII. Under that framework, to meet her initial burden of establishing a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class who (2) applied and was qualified for a position for which her employer was seeking applicants, and who (3) was rejected for the position (4) in circumstances giving rise to an inference of discrimination. See Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004); Bush v. Fordham Univ., 452 F. Supp. 2d 394, 407 (S.D.N.Y. 2006).[2] An employee who meets her initial burden is entitled to a presumption of discriminatory failure to promote, which her employer may rebut by providing a legitimate non-discriminatory reason for not promoting her. See, e.g., Bush, 452 F. Supp. 2d at 411.

Once the employer has offered a legitimate non-discriminatory reason for the decision not to promote, the plaintiff, who retains the ultimate burden of persuasion with respect to whether she was the victim of discrimination, must then usually show that her employer's stated

---

[2] Other cases describe the elements of the prima facie case in slightly different terms. See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000) (plaintiff must prove that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she applied for and was denied promotion to a position for which she was qualified; and (4) the position remained open and her employer continued to seek applicants). The precise articulation of the prima facie case is not material to the resolution of this motion.

11

reason for its decision is pretextual. See, e.g., Dent v. U.S. Tennis Ass'n, No. 08-CV-1533, 2011 WL 308417, at *4 (E.D.N.Y. Jan. 27, 2011); Chi Ho Lin v. New York City Admin. for Children's Servs., No. 99 Civ. 10314, 2003 WL 21973361, at *8 (S.D.N.Y. Aug. 19, 2003).

### B. Application of Relevant Law

Johnson's promotion claim cannot survive summary judgment.

First, there is the unchallenged evidence that Johnson abandoned the application process without any explanation and without stating that, notwithstanding her failure to submit a letter of interest or resume, she continued to be interested in promotion to the coordinator position. This, according to Meeker's testimony, is the reason that Johnson (like another applicant, Crowe) was not considered for promotion beyond the initial interview stage.

DESI argues that this is evidence that Johnson was denied the promotion for a legitimate non-discriminatory reason, although there is some reason to think that the evidence is properly considered evidence that Johnson never applied for the promotion (an element of her prima facie case). Cf. Arroyo, 2010 WL 3861071, at *4 (failure to submit formal application or resume as other applicants did not dispositive because plaintiff sent emails expressing interest in position and had follow-up conversations about the emails); Bunch v. Queens College, No. 98 Civ. 1172, 2000 WL 1457078, at *3 (S.D.N.Y. Sept. 28, 2003) (no summary judgment for failure to follow application process where plaintiff alleged that supervisor instructed him not to follow the process). Either way, it is evidence that counsels strongly against an inference that Johnson was denied promotion because of her race.

Second, there is the fact that the coordinator position was originally set to be offered to Koku and, after Koku decided to return to school, was ultimately awarded to Bektemba. Both of these men are, like Johnson, African-American, and this fact seriously undermines the

discrimination claim. See, e.g., Whaley v. New York City Dep't of Parks, No. 99-CV-7289, 2002 WL 2003202, at *2 (E.D.N.Y. Aug. 6, 2002) ("the fact that three of the five candidates chosen for interviews were [like the plaintiff] over forty . . . undercuts any inference of [age] discrimination").

Johnson, who has "chosen the risky and imprudent path" of declining to oppose DESI's motion, Vermont Teddy Bear, 373 F.3d at 247, has not identified any evidence that shows trial on the merits of the promotion claim is warranted. The Court has identified none. Accordingly, DESI is entitled to summary judgment, even if Johnson timely exhausted a promotion claim.

## CONCLUSION

The defendant's second motion for summary judgment is granted. The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      July  *5* , 2011

/S/

―――――――――――――
Carol Bagley Amon
United States District Judge